# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

DENNIS MARC GRIGSBY,

    Petitioner

v.

BRIAN E. WILLIAMS SR., et al.,

    Respondents.

Case No.: 2:16-cv-01886-APG-DJA

**Order**

    Dennis Marc Grigsby, a Nevada prisoner, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254. I deny Grigsby's habeas petition, deny him a certificate of appealability, and direct the Clerk of the Court to enter judgment accordingly.

## I.    BACKGROUND

    Grigsby's convictions are the result of events that occurred in Clark County, Nevada, on April 2, 2008. In its order affirming the denial of Grigsby's post-conviction petition for a writ of habeas corpus, the Supreme Court of Nevada described the crime, as revealed by the evidence at trial, as follows:

> In late March 2008, Grigsby kicked his wife, Tina Grigsby, out of their apartment because he believed that she was dating another man. Several days later, Tina moved in with her boyfriend, Anthony Davis, who lived in the same apartment complex as Grigsby. On the night of April 2, 2008, Grigsby got into an argument with Davis outside of Davis' apartment. Tina heard the exchange from inside Davis' apartment. The argument ceased after a few minutes; Tina heard gunshots about 10 to 15 minutes later. When the police arrived shortly thereafter, she relayed this information to police officers, who knocked on Grigsby's door. There was no answer. While police were still investigating the crime scene, Grigsby's mother, Mildred Grigsby, appeared, asking to gain entry into Grigsby's apartment to retrieve unidentified items. She was not allowed into the apartment but provided a key, which Grigsby had given her, to police officers so that they could determine if Grigsby was in the apartment; he was not in the residence. Subsequently, the police secured a search warrant, search Grigsby's apartment, and seized several items.

ECF No. 18-13 at 3.

Grigsby was convicted of first-degree murder with the use of a deadly weapon and possession of a firearm by an ex-felon. ECF No. 15-10 at 2. He was sentenced to life without the possibility of parole for the first-degree murder conviction plus a consecutive term of 60 to 240 months for the deadly weapon enhancement. He also was sentenced to 16-72 months for the possession of a firearm by an ex-felon conviction. *Id.* at 3. Grigsby appealed, and the Supreme Court of Nevada affirmed. ECF No. 15-14.

Grigsby filed a *pro per* state habeas corpus petition, a counseled supplemental petition, a *pro per* first-amended petition, a *pro per* supplemental first-amended petition, a *pro per* second-amended petition, a *pro per* third-amended petition, and a *pro per* superseding petition. ECF No. 15-16, 16-1, 16-3, 16-4, 16-5, 16-7, 17-6. The state district court denied Grigsby's petition. ECF No. 17-10. Grigsby moved for reconsideration and filed a notice of appeal. ECF No. 17-11, 17-12, 17-13. Due to Grigsby's appeal, the state district court noted that it did not have jurisdiction regarding Grigsby's motion for reconsideration. ECF No. 18-3. Grigsby moved to stay his appeal at the Supreme Court of Nevada pending resolution of the motion for reconsideration at the state district court. ECF No. 18-4. The Supreme Court of Nevada denied the motion for stay indicating that "[i]f the [state] district court is inclined to grant reconsideration, the [state district] court shall so certify its intention to [the Supreme Court of Nevada], and the matter may be remanded for the limited purpose of allowing the [state] district court to enter an order." ECF No. 18-5. The state district court granted the motion for reconsideration and set a date for an evidentiary hearing. ECF No. 18-10. Before the evidentiary hearing could be held, the Supreme Court of Nevada affirmed the denial of Grigsby's state habeas corpus petition. ECF No. 18-13. Grigsby petitioned for rehearing and a stay of remittitur stating that an evidentiary hearing was

pending and its order was premature. ECF No. 18-14.  The state district court vacated the

evidentiary hearing finding that it was moot following the Supreme Court of Nevada's order.

ECF No. 18-15.  The Supreme Court of Nevada denied rehearing and issued the remittitur. ECF

No. 18-16, 18-17.

Grigsby dispatched his *pro se* federal petition for a writ of habeas corpus on August 8,

2016. ECF No. 7.  The petition asserts that his federal constitutional rights were violated due to

the following alleged violations:

1. The state district court erred in not accommodating a full hearing for him to air additional reasons for his motion to dismiss counsel.
2. The state district court erred in admitting evidence of the arson of his car.
3. The State committed prosecutorial misconduct when it elicited answers that bore upon his invocation of the right to remain silent.
4. The state district court erred in allowing demonstrative evidence of a gun when no gun was recovered.
5. The state district court erred in rejecting his proposed jury instructions.
6. His trial counsel was ineffective in failing to timely move to suppress evidence recovered subsequent to an invalid warrantless search of his domicile.
7. His appellate counsel was ineffective in failing to raise a claim of prosecutorial misconduct in his direct appeal.
8. His appellate counsel was ineffective in failing to raise a claim regarding proper jury instructions in his direct appeal.
9. The Supreme Court of Nevada erred in prematurely issuing its order affirming the denial of his state habeas corpus petition because an evidentiary hearing was pending in the state district court.
10. There were cumulative errors.

The respondents filed a motion to dismiss on April 24, 2017. ECF No. 9.  Grigsby

opposed the motion, and moved for the appointment of counsel, for expansion of the record, and

for an evidentiary hearing. ECF Nos. 22, 23, 24, 25.  I granted the respondents' motion to

dismiss in part, denied Grigsby's motion for the appointment of counsel, denied Grigsby's

motion for expansion of the record, and denied Grigsby's motion for an evidentiary hearing. ECF

No. 28.  Specifically, I dismissed Grounds 1, 2, 4, and 5 without prejudice at Grigsby's direction

and dismissed Ground 9 without prejudice as non-cognizable. *Id.*

On May 10, 2018, the respondents filed an answer to the remaining grounds in Grigsby's

petition. ECF No. 31.  Grigsby filed a reply on June 18, 2018. ECF No. 32.  And the respondents

filed an opposition to Grigsby's reply on June 29, 2018. ECF No. 33.

## II.    STANDARD OF REVIEW

The standard of review generally applicable in habeas corpus cases is set forth is the

Antiterrorism and Effective Death Penalty Act (AEDPA):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant
> to the judgment of a State court shall not be granted with respect to any claim that
> was adjudicated on the merits in State court proceedings unless the adjudication of
> the claim --
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application
> of, clearly established Federal law, as determined by the Supreme Court of the
> United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts
> in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  A state court decision is contrary to clearly established Supreme Court

precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that

contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court

confronts a set of facts that are materially indistinguishable from a decision of [the Supreme]

Court." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362,

405-06 (2000), and citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)).  A state court decision is an

unreasonable application of clearly established Supreme Court precedent within the meaning of

28 U.S.C. § 2254(d) "if the state court identifies the correct governing legal principle from [the

Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's

case." *Id.* at 75 (quoting *Williams*, 529 U.S. at 413). "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous. The state court's application of clearly established law must be objectively unreasonable." *Id.* (quoting *Williams*, 529 U.S. at 409-10) (internal citation omitted).

The Supreme Court has instructed that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has stated "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102 (citing *Lockyer*, 538 U.S. at 75); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the standard as a "difficult to meet" and "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt" (internal quotation marks and citations omitted)).

## III. DISCUSSION

### A. Ground 3

In Ground 3, Grigsby argues that his federal constitutional rights were violated when the State committed prosecutorial misconduct by eliciting answers that bore upon his invocation of the right to remain silent. ECF No. 7 at 10. He explains that the State questioned the arresting officer about whether Grigsby offered a statement expressing surprise at being arrested. *Id.* at 11. Grigsby asserts that this question implied to the jury that he must be guilty. *Id.* at 12. The respondents argue that the State's questions flowed from Grigsby's cross-examination of the same witness and did not touch upon his right to remain silent. ECF No. 31 at 4. Grigsby rebuts that the officer in question did not apprehend him, so his cross-examination question of that

officer did not open the door for the State's far broader questioning. ECF No. 32 at 6. In Grigsby's direct appeal, the Supreme Court of Nevada held:

> Grigsby contends that the prosecution improperly elicited testimony about his post-arrest silence. We disagree. Questions concerning what a defendant says after his arrest are generally improper. *Morris v. State*, 112 Nev. 260, 263-64, 913 P.2d 1264, 1267 (1996) (providing prosecution forbidden from commenting upon defendant's post-arrest, pre-*Miranda* silence). However, Grigsby invited the line of questioning by examining the witness about Grigsby's reaction to his arrest. *See Milligan v. State*, 101 Nev. 627, 637, 708 P.2d 289, 295-96 (1985). Therefore, the district court did not err in overruling Grigsby's objection.

ECF No. 15-14 at 3-4.

Dennis Serna, a special agent with the Federal Bureau of Investigation who worked as a fugitive coordinator, testified that he was tasked with locating Grigsby. ECF No. 13-1 at 28-29. After he was located in Sacramento, Grigsby was taken into custody by a SWAT team. *Id.* at 36. During cross-examination, Grigsby's trial counsel questioned Special Agent Serna as follows:

> Q. And your report indicates that the arrest was effected [sic] without incident?
> A. Correct.
> Q. There were no problems during the arrest?
> A. Correct.
> Q. If there had been something, you would have noted that in your report?
> A. Yes.
> Q. Mr. Grigsby didn't try to flee?
> A. No.

*Id.* at 42. During redirect examination, the State followed up with Special Agent Serna:

> Q. Defense counsel asked you some questions about whether or not the defendant was taken into custody without incident. Do you remember those questions?
> A. Yes, I do.
> Q. If there had been some type of incident, like he had fought back or something like that, you would have put that in your report?
> A. Absolutely.

    Q.     Would you also have included in your report if he would have made statements at the time he was taken into custody?

    A.     It [sic], for example, the arresting officer - - because I was still at a distance still conducting surveillance when the actual officers put their hands on him. If he had made statements to them, obviously, I wouldn't have heard it. And unless they voiced it to me to allow me to put it in my report, I never got any information like that.

    Q.     Is there anything in your report, do you recall anything about whether or not the defendant expressed surprise about being taken into custody?

*Id.* at 46-47. Grigsby's trial counsel objected, and the state district court held a bench conference. *Id.* at 47. The State then continued its questioning:

    Q.     Agent Serna, is it reflected in your report at the time the defendant was taken into custody if he expressed surprise at being arrested?

    A.     It's not reflected in my report.

    Q.     Is it reflected in your report whether or not the defendant asked why he was being arrested?

    A.     It's not reflect [sic] in my report.

*Id.* at 47-48.

A prosecutor's comments on a defendant's failure to testify violate the self-incrimination clause of the Fifth Amendment. *Griffin v. California*, 380 U.S. 609, 614 (1965). Similarly, the prosecutor may not impeach a defendant with his post-*Miranda* warnings silence because those warnings carry an implicit "assurance that silence will carry no penalty." *Doyle v. Ohio*, 426 U.S. 610, 618 (1976) ("'[I]t it does not comport with due process to permit the prosecution during the trial to call attention to [a defendant's] silence at the time of arrest and to insist that because he did not speak about the facts of the case at that time, as he was told he need not do, an unfavorable inference might be drawn as to the truth of his trial testimony.'"). While the prosecutor violates *Griffin* when it "direct[ly] comment[s] about the defendant's failure to testify," it violates *Griffin* only when it "indirect[ly] comment[s about the defendant's failure to testify] . . . 'if it is manifestly intended to call attention to the defendant's failure to testify or is

of such a character that the jury would naturally and necessarily take it to be a comment on the failure to testify.'" *Hovey v. Ayers*, 458 F.3d 892, 912 (9th Cir. 2006) (quoting *Lincoln v. Sunn*, 807 F.2d 805, 809 (9th Cir. 1987)).

Although Grigsby's trial counsel questioned Special Agent Serna about Grigsby's conduct following the arrest to demonstrate that Grigsby was cooperative, the State expanded that line of questioning by inquiring about Grigsby's statements or lack of a statement. *See* ECF No. 13-1 at 47-48. While the State did not directly comment on Grigsby's post-arrest silence, it did so indirectly. *See Hovey*, 458 F.3d at 912.

However, "[r]eversal is warranted [for *Griffin* error] only 'where such comment is extensive, where an inference of guilt from silence is stressed to the jury as a basis for the conviction, and where there is evidence that could have supported acquittal." *Id.* (quoting *Anderson v. Nelson*, 390 U.S. 523, 524 (1968)); *see also Beardslee v. Woodford*, 358 F.3d 560, 588 (9th Cir. 2003) ("[W]hen the comments are limited in nature and could not have affected the verdict, we have declined to reverse."); *cf. Wood v. Ryan*, 693 F.3d 1104, 1113 (9th Cir. 2012) ("[P]rosecutorial misconduct[ ] warrant[s] relief only if [it] 'had substantial and injurious effect or influence in determining the jury's verdict.'" (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)). None of these factors is present: the State's questions to Special Agent Serna regarding Grigsby's statements were not extensive, the State did not bring up Grigsby's silence in its closing argument, and there was no direct evidence presented by Grigsby supporting acquittal. Further, the jury was instructed that:

> It is a constitutional right of a defendant in a criminal trial that he may not be compelled to testify. Thus, the decision as to whether he should testify is left to Mr. Grigsby on the advice and counsel of his attorneys. You must not draw any inference of guilt from the fact that he does not testify, nor should this fact be discussed by you or enter into your deliberations in any way.

ECF No. 14-2 at 20. That instruction tends to cure an improper comment by the State. *See*

*United States v. Jones*, 459 F.2d 47 (9th Cir. 1972).

The Supreme Court of Nevada's ruling was not contrary to, or an unreasonable

application of, clearly established federal law as determined by the Supreme Court, and was not

based on an unreasonable determination of the facts in light of the evidence. *See* 28 U.S.C.

§ 2254(d). I deny Grigsby habeas corpus relief with respect to Ground 3.

## B.  Ground 6

In Ground 6, Grigsby argues that his federal constitutional rights were violated when his

trial counsel failed to timely move to suppress evidence recovered in connection with an invalid

warrantless search of his domicile. ECF No. 7 at 22. Grigsby explains that the police gained

access to his apartment through the consent of his mother, Mildred Grigsby; however, Mildred

Grigsby's consent was invalid because she did not have dominion over his apartment. *Id.* at 23.

The respondents argue that the police seized evidence from Grigsby's apartment only after a

search warrant had been obtained. ECF No. 31 at 9. Grigsby rebuts that the search warrant was

obtained, partly, upon the prior search that was conducted based on his mother's invalid consent.

ECF No. 32 at 13.

In his state habeas appeal, the Supreme Court of Nevada held:

> Grigsby argued that the search of his apartment was improper because even though
> Mildred was the leaseholder of the apartment, she had no authority to allow police
> into his apartment as she did not reside there. The district court rejected his trial-
> counsel's claim, determining that Mildred had actual authority to consent to a
> search of Grigsby's apartment and therefore he assumed the risk of Mildred
> consenting to a search of the apartment. *See Taylor v. State*, 114 Nev. 1071, 1079,
> 968 P.2d 315, 321 (1998). Moreover, the district court concluded, the search
> warrant was properly issued based on Tina's statements to the police and the initial
> entry into the apartment was not the "but-for cause" of the discovery of the evidence
> in Grigsby's apartment. Rather, the initial entry into the apartment was simply to
> look for Grigsby and the seized evidence was obtained after a search warrant had
> issued. Therefore, trial counsel were not ineffective for not seeking to suppress the

seized evidence.  We conclude that the district court did not err by denying this claim.

ECF No. 18-13 at 3-4.

Grigsby's mother Mildred testified at the preliminary hearing that she did not reside in Las Vegas on April 2, 2008 but she was in town on that date and owned a home in Las Vegas. ECF No. 10-2 at 30.  She explained that on the evening of April 2, 2008, Grigsby "gave [her] a key to the apartment" and said he would call her later. *Id.* at 30-31.  She did not have a key to Grigsby's apartment prior to this interaction. *Id.* at 31.  Later that night, she went to Grigsby's apartment because he failed to call her, and she was concerned about her grandchild. *Id.*  When she arrived at the apartment, the police were there. *Id.*  She spoke to the police and allowed them entry into the apartment. *Id.* at 31-32.  Detective Laura Anderson testified that Mildred provided the police with a key to the apartment (ECF No, 14-1 at 6, 33), and Mildred signed a "consent to search card" allowing the Las Vegas Metropolitan Police Department to search the apartment for him. ECF No. 5-1 at 109.

Detective Laura Anderson indicated in her report that on April 3, 2008, "at approximately 0217 hours," Detective Williams spoke to Mildred Grigsby. ECF No. 5-2 at 10.  Contrary to her testimony at the preliminary hearing, Mildred Grigsby told Detective Williams that Grigsby had called her and asked her to go to his apartment to retrieve something. *Id.* At 2:25 a.m.  On April 3, 2008, Sergeant Mike Thompson applied for a telephonic search warrant of Grigsby's apartment. ECF No. 5-1 at 101.  In his telephonic application, Sergeant Thompson indicated that "LVMPD officers knocked on Grigsby's apartment door but he [sic] did not get an answer.  At approximately 0100 hours, Grigsby's mother arrived at 2068 Nellis #140 and allowed officers to enter the apartment to look for Dennis." *Id.* 102.  Sergeant Thompson also indicated that

Grigsby's wife Tina saw the victim "arguing with her husband" and that "[s]he went inside of [the victim's] apartment and heard gunshots." *Id.* The search warrant was granted. *Id.* at 103.

Mildred Grigsby testified at the preliminary hearing that her name was on Grigsby's apartment's lease. ECF No. 10-2 at 33; *see also* ECF No. 13-1 at 6, 12 (testimony of Maitee Salado, the property manager of Grigsby's apartment complex, that Mildred Grigsby was listed as the lessee on Grigsby's apartment's rental agreement). Tina testified at trial that while Mildred Grigsby's name was on the apartment lease, she did not reside there. ECF No. 11-2 at 62-63, 65-66. In January 2015, during Grigsby's state habeas corpus proceedings, Mildred declared that on April 3, 2008, she informed the Las Vegas Metropolitan Police Department that she "did not live at apartment #140"; that she never "informed them that apartment #140, was leased in [her] name"; that she "did not have dominion or actual use of apartment #140, nor property within"; and that "although [she] leased apartment #140 on May 1, 2006, Dennis M. Grigsby . . . had dominion and control over the premises." ECF No. 5-2 at 112.

During his initial interview with his trial counsel, prior to his trial, and during the trial, Grigsby made it clear that he wanted his trial counsel file a motion to suppress the evidence found in his apartment due to his mother's alleged invalid consent to search his apartment. *See* ECF No. 14-3 at 15 (statement by Grigsby to the state district court during the trial that: "I'd just like the opportunity to preserve some possible appellate issues for the record. And the issues are that counsel knew ahead of time before very early in pretrial about the issues of suppression at Apartment No. 140 at 2068 North Nellis"); ECF No. 5-2 at 126 (letter from Grigsby to his trial counsel dated a week before his trial began "assert[ing] that a suppression motion be filed regarding the search of [his] apartment" because "[his] mom rented the apartment for [him] because [he] was a felon" and explaining that his mother "never lived at my apartment"); ECF

No. 5-2 at 80 (internal memo of the Office of the Special Public Defender where Grigsby "question[ed] the validity of the search conducted on his mother's apartment" during his initial interview). However, his trial counsel did not file a motion to suppress.

In *Strickland v. Washington*, the Supreme Court propounded a two-prong test for analysis of claims of ineffective assistance of counsel, requiring the petitioner to demonstrate (1) that the attorney's "representation fell below an objective standard of reasonableness," and (2) that the attorney's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. 668, 688, 694 (1984). A court considering a claim of ineffective assistance of counsel must apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The petitioner's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. And, to establish prejudice under *Strickland*, it is not enough for the habeas petitioner "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. Rather, the errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

Where a state district court previously adjudicated the claim of ineffective assistance of counsel under *Strickland*, establishing that the decision was unreasonable is especially difficult. *See Harrington*, 562 U.S. at 104-05. In *Harrington*, the Supreme Court instructed:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," [*Strickland*, 466 U.S. at 689]; *Lindh v. Murphy*, 521 U.S. 320, 333, n.7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*[ *v. Mirzayance*, 556 U.S. 111, 123 (2009)]. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at 123, 129 S.Ct. at 1420. Federal habeas courts must guard against the danger of equating unreasonableness under

> *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonably argument that counsel satisfied *Strickland*'s deferential standard.

*Harrington*, 562 U.S. at 105; *see also Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010) ("When a federal court reviews a state court's *Strickland* determination under AEDPA, both AEDPA and *Strickland*'s deferential standards apply; hence, the Supreme Court's description of the standard as 'doubly deferential.'").

In analyzing a claim of ineffective assistance of counsel under *Strickland*, a court may first consider either the question of deficient performance or the question of prejudice; if the petitioner fails to satisfy one element of the claim, the court need not consider the other. *See Strickland*, 466 U.S. at 697.

In order to determine whether his trial counsel was deficient for not filing a motion to suppress, I must first assess whether there was a violation of Grigsby's Fourth Amendment right. The Fourth Amendment protects individuals from "unreasonable searches and seizures." U.S. Const. amend. IV. The Fourth Amendment protects an individual's reasonable expectation of privacy in the area searched or the items seized. *California v. Greenwood*, 486 U.S. 35, 39 (1988). When an individual has a reasonable expectation of privacy, law enforcement may not conduct a search absent consent, a search warrant, or an exception to the warrant requirement. *See Kentucky v. King*, 563 U.S. 452, 459 (2011); *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973).

The State must establish the effectiveness of a third party's consent. *Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990). "[C]onsent to a search must be made by an individual with common authority over the property." *United States v. Kim*, 105 F.3d 1579, 1582 (9th Cir. 1997). The

Supreme Court has explained that "common authority" is not synonymous with property ownership:

> Common authority is, of course, not to be implied from the mere property interest a third party has in the property. The authority which justifies the third-party consent does not rest upon the law of property, with its attendant historical and legal refinements, *see Chapman v. United States*, 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed. 2d 828, (1961) (landlord could not validly consent to the search of a house he had rented to another), *Stoner v. California*, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed. 2d 856 (1964) (night hotel clerk could not validly consent to search of customer's room) but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.

*United States v. Matlock*, 415 U.S. 164, 171 n.7 (1974). The Supreme Court has further noted that:

> the "right" to admit the police to which *Matlock* refers is not an enduring and enforceable ownership right as understood by the private law of property, but is instead the authority recognized by customary social usage as having a substantial bearing on Fourth Amendment reasonableness in specific circumstances.

*Georgia v. Randolph*, 547 U.S. 103, 120-21 (2006).

The Ninth Circuit evaluates three factors in assessing whether a third party effectively consented to a search: "(1) whether the third party has an equal right of access to the premises searched; (2) whether the suspect is present at the time the third party consent is obtained; and (3) if so, whether the suspect actively opposes the search." *United States v. Warner*, 843 F.2d 401, 403 (9th Cir. 1988); *see also United States v. Impink*, 728 F.2d 1228, 1233 (9th Cir. 1984) (explaining that "*Matlock* . . . leaves open three possible variables in the consent calculus. First, the third party may not generally have 'joint access . . . for the most purposes'; his right of access may be narrowly prescribed. Second, the objector may not be an 'absent . . . person'; he may be

present at the time third party consent is obtained.  Finally, the objector may not simply be 'nonconsenting'; he may actively oppose the search").  The Ninth Circuit "cases upholding searches generally rely on the consent-giver's unlimited access to property to sustain the search." *Kim*, 105 F.3d at 1582.

Although Mildred Grigsby did not reside at the apartment, she was the sole person on the apartment's lease and, importantly, she had a key to the apartment. *See United States v. Guzman*, 852 F.2d 1117, 1122 (9th Cir. 1988) ("Beyond the other evidence of her status as [the defendant]'s wife, and lessee and sometime resident of the apartment, her possession of a key in itself has special significance."); *United States v. Gulma*, 563 F.2d 386, 389 (9th Cir. 1977) ("Special significance may be attributed to [the defendant] having entrusted the motel room key to [the third-party consenter].").  Based on these facts, it appears that Mildred Grigsby had "joint access or control for most purposes" over the apartment. *Matlock*, 415 U.S. at 171 n.7.  And Mildred Grigsby's consent was to search for Grigsby only. *See* ECF No. 5-1 at 109.  The evidence seized from the apartment was seized pursuant to a search warrant. *See* ECF No. 5-1 at 101-103; *see also King*, 563 U.S. at 459 (allowing a search based on a search warrant).  Because there was nothing seized from the consent search and because Grigsby does not allege any deficiency regarding the search warrant, there was nothing to suppress.  And contrary to Grigsby's contention that the search warrant was based on the previous consent search, it appears that the search warrant was based primarily on Tina's statement to the police that she saw the victim "arguing with her husband" and that "[s]he went inside of [the victim's] apartment and heard gunshots." *Id.* at 102.

Because Mildred Grigsby's consent for the police to search the apartment was valid and Grigsby's Fourth Amendment rights were not violated, there was nothing to suppress.  Thus,

Grigsby's trial counsel's "representation [did not] f[a]ll below an objective standard of

reasonableness" by not filing a motion to suppress. *See Strickland*, 466 U.S. at 688.  The

Supreme Court of Nevada's ruling that Grigsby's "trial counsel were not ineffective for not

seeking to suppress the seized evidence" (ECF No. 18-13 at 4) was not contrary to, or an

unreasonable application of, clearly established federal law as determined by the Supreme Court,

and was not based on an unreasonable determination of the facts in light of the evidence. *See* 28

U.S.C. § 2254(d).  I deny Grigsby habeas corpus relief with respect to Ground 6.

### C.    Ground 7

In Ground 7, Grigsby argues that his federal constitutional rights were violated when his

appellate counsel failed to raise a claim of prosecutorial misconduct in his direct appeal. ECF

No. 7 at 30.  He explains that the State improperly instructed the jury on an unsettled, unused

instruction. *Id.* at 35.  Grigsby also alleges his appellate counsel did not obtain copies of the guilt

phase transcripts in order to see that Grigsby's trial counsel properly preserved this issue for

appeal. *Id.* at 30-31.  The respondents argue that Grigsby's appellate counsel had no basis to

challenge the comments made by the State because the comments were a correct statement of the

law. ECF No. 31 at 9.

In Grigsby's state habeas appeal, the Supreme Court of Nevada held:

> Grigsby argued that appellate counsel was ineffective for not challenging the
> prosecutor's comment to the jury that a guilty verdict is permissible so long as the
> determination of guilt is unanimous even if the jurors were not unanimous as to the
> theory of guilt, as the jury was not instructed on that legal principle before
> deliberation.  Because the prosecutor's comment was a correct statement of the law,
> *see Schad v. Arizona*, 501 U.S. 624, 631 (1991); *Holmes v. State*, 114 Nev. 1357,
> 1364, n.4, 972 P.2d 337, 342 n.4 (1998), Grigsby failed to demonstrate that
> appellate counsel was ineffective for failing to challenge the comment on appeal.
> Accordingly, the district court properly denied this claim.

ECF No. 18-13 at 4.

During its closing argument, the State argued the following:

> The next instruction talks about theories of first degree murder. If you go back and deliberate and, say, six of you find beyond a reasonable doubt that [you] believe that he's guilty under the theory of lying in wait. And six of you say to yourselves: You know what, I think he's guilty, but I don't think it's premeditation and deliberation. As long as you all agree on a theory of first degree murder, then he can be guilt of first degree murder.

ECF No. 14-3 at 48-49. Grigsby's trial counsel asked for a bench conference, which was held. *Id.* at 49. The state district court then told the State that it could proceed. *Id.* The State continued: "So you don't have to agree on the theory, as long as you believe beyond a reasonable doubt one of those two theories, either lying in wait, or murder that is deliberate and done with premeditation." *Id.*

After the jury started deliberations, a hearing was held outside the presence of the jury to discuss a jury question. ECF No. 15-1 at 2. During that hearing, the state district court stated:

> Next counsel will recall during the omission portion of our guilt phase of this trial that it was in closing made mention by [the State] that the jury could find guilt of first degree murder by either of two theories, and it could be a combination of the jurors feeling one way or the other to the two theories and if they were unanimous in finding a theory, then it would be binding.
>
> [Grigsby's trial counsel] preserved the record for appeal. He expressed it freely at the bench and I allowed it to go forward and I had indicated we would supplement the instructions. We didn't get a supplement to the instructions into the jury at the outset when they did adjourn to confer the matter, and we discussed it in chambers after a copy was delivered to my chambers, and I felt that the agreement was to send this in at the time after six or eight hours of deliberation. It might put a little undue emphasis. It might be unfair so I have it in my hand. It will be the next Court's exhibit, but we did not give this over to the jury.

*Id.* Grigsby's trial counsel then explained:

> At the bench we did object to them arguing that on the basis that there was no jury instruction to that effect and although we did concede that if an instruction had been offered that the Court probably would have allowed that instruction under the case of Shad (phonetic) versus Arizona, but if they had offered it when we

> settled jury instructions, we would have objected to it at that time and are putting on the record now our objection to that instruction as basically doing away with the requirement that a jury be unanimous and pick and choose liability in order to convict someone of a first degree murder charge when there are more than one theory presented.
>
> We would request the objection preserved on the record, and we did object timely when the State argued it to the jury and that the jury did not receive an instruction they took back in the jury room with that language in it.

*Id.* at 3. The state district court then stated:

> Okay. I'll not mention the failure to incorporate this additional instruction. It was merely an oversight. There was no intent I don't think, and I would point out that I think the status of the law in Nevada is that these alternate considerations can be considered, these alternate theories so that's why I allowed it to go forward.

*Id.*

In order to prevail on an ineffective assistance of appellate counsel claim, Grigsby "must first show that his counsel was objectively unreasonable . . . in failing to find arguable issues on appeal—that is, that counsel unreasonably failed to discover nonfrivolous issues and to file a merits brief raising them." *Smith v. Robbins*, 528 U.S. 259, 285 (2000). If Grigsby is successful in meeting that burden, "he then has the burden of demonstrating prejudice. That is, he must show a reasonable probability that, but for counsel's unreasonable failure to file a merits brief, he would have prevailed on his appeal." *Id.*

In order to determine whether his appellate counsel acted objectively unreasonably in failing to raise this claim, I must first assess whether the State's comments amounted to prosecutorial misconduct. "[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). "The relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of

due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). A court must judge the remarks "in the context in which they are made." *Boyde v. California*, 494 U.S. 370, 385 (1990).

The State charged Grigsby with murder with the use of a deadly weapon, committed by either of two theories: "(1) willful, deliberate and premeditated; and/or (2) committed by Defendant lying in wait to commit the killing." ECF No. 10-9 at 2-3. Importantly, a jury need only agree that a defendant committed the offense, and jurors may generally base their conclusions on different theories of both the *actus reus* and *mens rea. Schad v. Arizona*, 501 U.S. 624, 632 (1991) (plurality opinion); *see also Mason v. State*, 118 Nev. 554, 558, 51 P.3d 521, 524 (2002) ("[Appellant] argues that the jury was improperly instructed that it need not agree unanimously on the theory of guilt, but we have repeatedly approved this statement of law."); *Walker v. State*, 113 Nev. 853, 870, 944 P.2d 762, 773 (1997) ("[W]e conclude that the trial court did not err in instructing the jury that it did not have to unanimously agree upon a theory of murder.").

Because the jury only needed to agree that Grigsby committed the offense of murder with the use of a deadly weapon, it was proper for the jurors to have potentially based their conclusions on different theories of *mens rea*—either willful, deliberate and premeditated murder or murder committed by "watching, waiting, and concealment . . . with the intention of inflicting bodily injury upon such person or of killing such person." *Moser v. State*, 91 Nev. 809, 813, 544 P.2d 424, 426 (1975). Accordingly, it was not improper for the State to argue that "[s]o you don't have to agree on the theory, as long as you believe beyond a reasonable doubt one of those two theories, either lying in wait, or murder that is deliberate and done with premeditation." ECF No. 14-3 at 49.

Because the State's comment was not improper and did not impact "the fairness of [Grigsby's] trial," *Smith*, 455 U.S. at 219, Grigsby has not shown that his appellate counsel was "objectively unreasonable . . . in failing to" argue this issue on appeal. *Smith*, 528 U.S. at 285; *see also Jones v. Barnes*, 463 U.S. 745, 753 (1983) ("A brief that raises every colorable issue runs the risk of burying good arguments."). Therefore, the Supreme Court of Nevada's ruling that "Grigsby failed to demonstrate that appellate counsel was ineffective for failing to challenge the comment on appeal," ECF No. 18-13 at 4, was not contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court, and was not based on an unreasonable determination of the facts in light of the evidence. *See* 28 U.S.C. § 2254(d). I deny Grigsby habeas corpus relief with respect to Ground 7.

## D.     Ground 8

In Ground 7, Grigsby argues that his federal constitutional rights were violated when his appellate counsel failed to raise a claim regarding proper jury instructions in his direct appeal. ECF No. 7 at 37. Specifically, following his trial counsel's objection to the State's closing argument regarding the two theories upon which the jury could find that Grigsby was guilty of murder, Grigsby argues that the state district court indicated that it would give the jury a supplemental instruction, but it failed to do so before deliberations began. *Id.* at 39. Grigsby also argues that the state district court erred in submitting the supplemental instruction as an exhibit to the jury after deliberations had begun. *Id.* at 40.

In his state habeas appeal, the Supreme Court of Nevada held:

> Grigsby argues that appellate counsel was ineffective for not raising a claim that the district court erred by providing a supplemental instruction to the jury several hours after deliberations had begun. However, the record shows that the district court did not give the jury a supplemental instruction after deliberations began. Because Grigsby failed to show that appellate counsel was ineffective for not raising this claim on appeal, the district court properly denied this claim.

ECF No. 18-13 at 4-5.

To the extent that Grigsby argues that the state district court erred in sending a supplemental instruction to the jury once deliberations had already begun (*see* ECF No. 7 at 40), that argument is belied by the record. The state district judge indicated that he had the supplemental instruction "in my hand. It will be the next Court's exhibit, but we did *not* give this over to the jury." ECF No. 15-1 at 2 (emphasis added). The judge's indication that the supplemental instruction was marked as an exhibit does not mean that it was admitted or submitted to the jury.

Grigsby next argues the state district court failed to properly instruct the jury. Again, the State argued that "[t]he next instruction talks about theories of first degree murder" and then explained that the jury did not "have to agree on the theory, as long as [they] believe[d] beyond a reasonable doubt one of th[e] two theories." ECF No. 14-3 at 48-49. However, there was no alternate theory jury instruction, which, according the state district court, appeared to "merely [be] an oversight." ECF No. 15-1 at 3. Nevada Revised Statute § 175.161(1) allows the state district court to "giv[e] . . . further instructions which may become necessary by reason of the argument." That is what the judge intended to do: "I had indicated we would supplement the instructions." ECF No. 15-1 at 2. But no supplementation was accomplished before the jury began deliberations. *See id.* Because "arguments of counsel cannot substitute for instructions by the court," *Taylor v. Kentucky*, 436 U.S. 478, 488-89 (1978), and because § 175.161(1) provides that "no charge or instructions may be given to the jury otherwise than in writing," the state district court arguably should have supplemented the jury instructions with an alternate theory instruction prior to deliberations, since the State brought up the law on the use of alternate theories in its closing argument.

But even if Grigsby's appellate counsel erred in failing to bring a claim on direct appeal regarding the trial court's failure to properly instruct the jury, Grigsby cannot meet his burden of also demonstrating prejudice. *Smith*, 528 U.S. at 285. Grigsby's trial counsel indicated that he "would have objected to" an alternate theory instruction if the State "had offered it when we settled jury instructions." ECF No. 15-1 at 2. His trial counsel explained that the alternate theory instruction "basically [does] away with the requirement that a jury be unanimous and pick and choose liability in order to convict someone of a first degree murder charge when there [is] more than one theory presented." *Id.* Therefore, the State's oversight in not offering the alternate theory instruction and the state district court's failure to supplement the instructions benefitted Grigsby: an alternate theory instruction would have clarified—more so than was already done by the State during closing arguments—that the jurors did not have to come to a unanimous decision regarding the theory of first-degree murder. And even if the alternate theory instruction would have been beneficial to Grigsby, it is mere speculation that Grigsby "would have prevailed on his appeal" if his appellate counsel would have included a claim regarding the lack of a supplemental instruction. *Smith*, 528 U.S. at 285; *see also Djerf v. Ryan*, 931 F.3d 870, 881 (9th Cir. 2019) ("[P]rejudice is not established by mere speculation.").

The Supreme Court of Nevada's ruling was not contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court, and was not based on an unreasonable determination of the facts in light of the evidence. *See* 28 U.S.C. § 2254(d). I deny Grigsby habeas corpus relief with respect to Ground 8.

### E.     Ground 10

In Ground 10, Grigsby argues that the cumulative errors of the previous grounds warrant reversal of his convictions. ECF No. 7 at 46. In his state habeas appeal, the Supreme Court of

Nevada held, "[b]ecause Grigsby did not demonstrate error, his contention that cumulative error requires reversal of his conviction and sentence lacks merit. Therefore, the district court properly denied this claim." ECF No. 18-13 at 5 n.2.

"Cumulative error occurs when 'although no single trial error examined in isolation is sufficiently prejudicial to warrant reversal, the cumulative effect of multiple errors [has] still prejudice[d] a defendant.'" *Wooten v. Kirkland*, 540 F.3d 1019, 1022 (9th Cir. 2008) (quoting *Whelchel v. Washington*, 232 F.3d 1197, 1212 (9th Cir. 2000)) (alterations in original). I have identified only two potential errors: the State's indirect comment regarding Grigsby's silence at the time of his arrest, which did not amount to reversible error, and the fact that the state district court could have supplemented the jury instructions, which did not prejudice Grigsby. The cumulative effect of these two minor errors did not prejudice Grigsby. *Wooten*, 540 F.3d at 1022. Therefore, the Supreme Court of Nevada's ruling was not contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court, and was not based on an unreasonable determination of the facts in light of the evidence. *See* 28 U.S.C. § 2254(d). I deny Grigsby habeas corpus relief with respect to Ground 10.

### F.      Evidentiary Hearing

Grigsby requested an evidentiary hearing. ECF No. 32 at 1. "[T]he decision to grant an evidentiary hearing [is] generally left to the sound discretion of district courts." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing 28 U.S.C. § 2254, Rule 8(a) ("[T]he judge must review the answer [and] any transcripts and records of state-court proceedings . . . to determine whether an evidentiary hearing is warranted")). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true would entitle the applicant to federal habeas

relief." *Id.* at 474. And "[i]t follows that if the record . . . otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Id.*

Grigsby fails to explain what evidence would be presented at an evidentiary hearing. I have determined that Grigsby is not entitled to relief for Grounds 3, 6, 7, 8, and 10, and neither further factual development nor any evidence that may be proffered at an evidentiary hearing would affect my reasons for denying those grounds. I deny Grigsby's request for an evidentiary hearing.

## IV.    CERTIFICATE OF APPEALABILITY

The standard for the issuance of a certificate of appealability requires a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c). The Supreme Court has interpreted 28 U.S.C. § 2253(c) as follows:

> Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also James v. Giles*, 221 F.3d 1074, 1077-79 (9th Cir. 2000). A certificate of appealability is unwarranted. I deny Grigsby a certificate of appealability.

## V.    CONCLUSION

I THEREFORE ORDER that the Petition for a Writ of Habeas Corpus **(ECF No. 7) is DENIED**.

I FURTHER ORDER that Grigsby is denied a certificate of appealability.

1      I FURTHER ORDER that, under Federal Rule of Civil Procedure 25(d), the Clerk of

2 Court is directed to substitute Brian E. Williams Sr. for Dwight Neven as the respondent warden

3 on the docket for his case.

4      I FURTHER ORDER that the Clerk of the Court is directed to enter judgment

5 accordingly.

6      Dated: October 18, 2019.

7 

ANDREW P. GORDON
8                   UNITED STATES DISTRICT JUDGE